IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM RYAN TAVENNER and ) <br> AMY TAVENNER, co-independent administrators ) <br> of the estate of WILLIAM HENRY TAVENNER, ) <br> deceased, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) | No. 07 C 3680 <br><br> Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs William Ryan Tavenner and Amy Tavenner, co-independent administrators of the estate of William Henry Tavenner ("Tavenner"), deceased, filed a complaint against defendant United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq. Plaintiffs allege that defendant, through the Tomah Veterans Administration Medical Center ("Tomah V.A."), carelessly and negligently committed or failed to commit acts that led to the wrongful death of Tavenner. Plaintiffs have filed a motion for partial summary judgment as to liability. For the reasons stated herein, plaintiffs' motion is denied.

1

# **FACTS**[1]

From December 2004 until his death on January 20, 2005, Tavenner was a patient in Veterans Administration ("V.A.") hospitals in the Western District of Wisconsin. In December 2004, he was admitted to the William S. Middleton Memorial Veterans Hospital in Madison, Wisconsin (the "Madison V.A.") for treatment of lower extremity inflamation from cellulitis. He also suffered from obesity, significant tobacco abuse, multiple pulmonary nodules, and mediastinal lympadenopathy. While at the Madison V.A., Tavenner was found to be anemic due to chronic illness, diagnosed with a heart murmur, and developed sudden onset of tchypnea (shallow respirations) and hypoxia. On or about January 4, 2005, Tavenner was transferred to Tomah V.A. for continued treatment of leg skin irritation, cellulitis, and ulcers.

While a patient in the V.A. hospitals, Tavenner was diagnosed with sleep apnea. Sleep apnea can interfere with inhaling oxygen, resulting in death. Fatigue and oversedation can exacerbate a patient's symptoms and increase the risk of potentially fatal breathing problems. Providing supplemental oxygen while a person with sleep apnea is asleep reduces the risk of death from lack of oxygen that can result from sleep apnea. Tavenner's sleep apnea was initially treated with a Continuous Positive Airway Pressure ("CPAP") machine, but that practice was discontinued because he could not tolerate the CPAP mask. On January 5, 2005, Tavenner's primary care provider, Nurse Practitioner Michelle Gavin, ordered oxygen to be offered to Tavenner at nighttime by nasal cannula. Although hospital records indicate that oxygen was offered during the evening shift on January 5, 10, and 11, and the night shift on January 11, 16,

---

[1] Unless otherwise noted, the following facts, taken from the parties' L.R. 56.1 statements and accompanying exhibits are not in dispute.

and 17, there is no record of whether it was offered on any other occasion. The parties dispute whether Tavenner regularly applied his own oxygen.

During the night of January 19-20, 2005, there is no record of Tavenner receiving nocturnal oxygen. At 5:55 a.m. on January 20, a nurse went to give Tavenner his morning medication and found him unresponsive, without a pulse or respirations. She issued a crash code alerting hospital staff of his condition and the need for assistance. The parties dispute whether Tavenner had a nasal cannula attached when he was found, or whether it was administered later. Attempts to resuscitate him failed, and Dr. Farhat Khan ("Dr. Khan"), the attending physician, pronounced Tavenner dead at 6:30 a.m.

Dr. Khan had not previously seen or treated Tavenner prior to responding to the crash code. He issued the death certificate and noted that the death was sudden (unexpected) and the immediate cause was cardiac arrest due to/or as a consequence of sleep apnea. Dr. Khan testified that Tavenner had numerous other conditions that could have caused cardiac arrest. His comorbidities in sudden death were: (a) smoker; (b) hypertension; (c) diabetes; (d) obesity; (e) pulmonary embolism; (f) leg ulcers; and (g) poor venous circulation. When Dr. Khan wrote the death certificate, the Tavenner's family had not decided whether to proceed with an autopsy. Dr. Khan's intention was that if an autopsy was done, the real cause of death would be determined, and the death certificate would be corrected. Because he did not arrive at the scene until Tavenner had already died, Dr. Khan included sleep apnea as a probable cause of death because it was more apparent than other causes, and he did not have proof of other probable causes.

and 17, there is no record of whether it was offered on any other occasion. The parties dispute whether Tavenner regularly applied his own oxygen.

During the night of January 19-20, 2005, there is no record of Tavenner receiving nocturnal oxygen. At 5:55 a.m. on January 20, a nurse went to give Tavenner his morning medication and found him unresponsive, without a pulse or respirations. She issued a crash code alerting hospital staff of his condition and the need for assistance. The parties dispute whether Tavenner had a nasal cannula attached when he was found, or whether it was administered later. Attempts to resuscitate him failed, and Dr. Farhat Khan ("Dr. Khan"), the attending physician, pronounced Tavenner dead at 6:30 a.m.

Dr. Khan had not previously seen or treated Tavenner prior to responding to the crash code. He issued the death certificate and noted that the death was sudden (unexpected) and the immediate cause was cardiac arrest due to/or as a consequence of sleep apnea. Dr. Khan testified that Tavenner had numerous other conditions that could have caused cardiac arrest. His comorbidities in sudden death were: (a) smoker; (b) hypertension; (c) diabetes; (d) obesity; (e) pulmonary embolism; (f) leg ulcers; and (g) poor venous circulation. When Dr. Khan wrote the death certificate, the Tavenner's family had not decided whether to proceed with an autopsy. Dr. Khan's intention was that if an autopsy was done, the real cause of death would be determined, and the death certificate would be corrected. Because he did not arrive at the scene until Tavenner had already died, Dr. Khan included sleep apnea as a probable cause of death because it was more apparent than other causes, and he did not have proof of other probable causes.

Plaintiffs filed the instant action claiming that Tavenner's death from sleep apnea was causally connected to the Tomah V.A. staff's negligent omissions in failing to administer nocturnal oxygen as ordered.

## **DISCUSSION**

*Standard of Review*

Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Village Church v. Village of Long Grove, 468 F.3d 975, 988 (7th Cir. 2006). The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of material fact. See Celotex, 477 U.S. at 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

*Medical Malpractice*

The Federal Tort Claims Act (FTCA) provides a remedy for personal injury or death caused by the negligent or wrongful act or omission of a federal employee while acting within

the scope of employment in situations where the federal government, if a private person, would be liable to the plaintiff pursuant to the law of the place where the act or omission occurred. 28 U.S.C. 1346(b). Because the acts of alleged negligence here took place at the Tomah V.A., Wisconsin law applies. As in an ordinary negligence action, to establish a prima facie case of medical malpractice under Wisconsin law a plaintiff must demonstrate: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached its duty of care; (3) a causal connection between the conduct and the injury; and (4) actual damages resulting from the injury. Paul v. Skemp, 242 Wis.2d 507 (2001); White v. U.S., 148 F.3d 787 (7th Cir. 1998). The standard of care in medical malpractice cases must be established through expert medical testimony, unless under the circumstances "the common knowledge of lay people affords a basis for a finding of negligence." Christianson v. Downs, 90 Wis. 2d 332, 338 (Wis. 1979). Liability extends only where it is determined that a breach of duty was the cause-in-fact and the proximate, or legal, cause of the plaintiff's injury.

Plaintiffs argue that the federal government had a duty of care to Tavenner, as a matter of law, because he was a patient at a V.A. hospital. They contend that the hospital staff, as employees of the government, breached this duty when they failed to administer nocturnal oxygen on the night of Tavenner's death in contravention of explicit treatment orders. Plaintiffs further allege that this breach was the actual and proximate cause of the Tavenner's death. Therefore, they argue, they are entitled to summary judgment because there is no genuine issue of material fact as to liability. Defendant counters that summary judgement should be denied because there is a genuine issue of material fact on the issue of causation, and plaintiffs fail to establish a prima facie case for medical malpractice.

5

The court concludes that summary judgment as to liability at this juncture in the proceedings is inappropriate because there is a genuine issue of material fact as to the cause of Tavenner's death. The issue is whether the record establishes to a reasonable degree of medical certainty that Tavenner's sleep apnea caused his death. While it is true that the death certificate indicates the cause of death was "cardiac arrest due to or as a consequence of sleep apnea," the testimony of the issuing physician, Dr. Khan, casts doubt on this conclusion. Dr. Khan, while qualified to issue a death certificate, had never seen or treated Tavenner, and his first contact with him was after he was deceased. He issued the death certificate based on the information available to him when he arrived for the crash code, but he did not make a thorough inquiry into the cause of death.

In fact, Dr. Khan testified that he was going off shift and needed to write something on the certificate other than cardiac arrest before he left. He acknowledged that Tavenner had numerous simultaneously existing medical conditions that could have caused cardiac arrest, sleep apnea being one of them. Dr. Kahn testified that sleep apnea was a probable cause of death, but given the limited information available to him in the moment, sleep apnea was a tentative cause of death diagnosis, rather than a definitive one. His understanding was that if a later autopsy was conducted, the records could be corrected. An autopsy was never authorized, and the death certificate was never revised. Consequently, Tavenner's cause of death is uncertain. The parties have not yet exchanged any expert discovery, nor have any expert depositions been taken to date. Absent an autopsy or expert testimony, there is a genuine issue of material fact as to the cause of Tavenner's death. Therefore, plaintiffs' motion for partial summary judgement is denied.

## CONCLUSION

For the reasons stated herein, plaintiffs' motion for partial summary judgment is denied.


**ENTER:**     **April 16, 2009**

                                                      _____

                                                      **Robert W. Gettleman**
                                                      **United States District Judge**